IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SANDRA BOYETT, individually, and as personal representative for the Estate of RAYMOND BOYETT; JESSICA (BOYETT) PETERSON; and BRANDY (BOYETT) SORENSEN,<br><br>   Plaintiffs,<br><br>vs.<br><br>COUNTY OF WASHINGTON, a political subdivision of the State of Utah, *et al.*,<br><br>   Defendants. | ORDER GRANTING DEFNDANTS FRED KEIL'S AND JON WORLTON'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION TO WITHDRAW THEIR MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:04-CV-01173-PGC-DON |

In this civil rights case, the surviving family members of Raymond Boyett and his estate seek damages from various government officials and entities. The plaintiffs seek damages for alleged violations of civil rights under 42 U.S.C. § 1983, negligence, wrongful death, and infliction of emotional distress based on events surrounding Mr. Boyett's death while being held as an inmate at a Washington County, Utah correctional facility.

Defendants Fred Keil and Jon Worlton have moved for summary judgment on plaintiffs' deliberate indifference, excessive force, and unwanted administration of antipsychotics claims under § 1983.  In addition, plaintiffs have moved to withdraw their motion for summary judgment against all defendants.  After carefully considering the parties' arguments, the court GRANTS Mr. Keil's and Mr. Worlton's motions.  A claim that prison officials were deliberately indifferent to an inmate's medical needs will succeed only if the inmate had a serious medical condition that officials were slow to treat, and if the delay in receiving that treatment caused substantial harm.  There is no evidence to suggest such indifference in this case by Mr. Keil or Mr. Worlton.  A claim of excessive force by prison officials will succeed only if the force was not applied in good faith to maintain discipline, but maliciously or sadistically to cause the prisoner harm.  There is no evidence to suggest that these defendants applied any force to Mr. Boyett.  A claim of involuntary administration of antipsychotic drugs will succeed only if the individual's liberty interest outweighs the state interest in preventing the individual from harming himself or others at the institution.  There is no evidence to suggest that the medications were not in Mr. Boyett's medical interest to prevent him from harming himself.  The court also GRANTS plaintiffs' motion to withdraw their motion for summary judgment.

## BACKGROUND

Mr. Boyett died while being held as an inmate at the Washington County Purgatory Correctional Facility in Hurricane, Utah.  Before Mr. Boyett's incarceration, he underwent surgery for a hernia.  After this surgery, Washington County sought and received medical clearance from the Dixie Regional Medical Center to incarcerate Mr. Boyett.  He was

incarcerated on August 28, 2003.

On September 3, 2003, Mr. Boyett fell near some stairs, and another prisoner notified Fred Keil, a deputy at the facility, of the fall. Mr. Keil radioed Nurse Darryl McCoy and waited with Mr. Boyett until Mr. McCoy arrived. Mr. McCoy examined Mr. Boyett and treated him for a cut on the arm.

On September 5, 2003, Jon Worlton, a social worker at the facility, examined Mr. Boyett's mental condition at the request of the medical staff. The day before, Mr. Boyett banged his head on a door through much of the swing shift. After the examination, Mr. Worlton concluded that Mr. Boyett was suffering from some psychosis and may be a danger to himself. Mr. Worlton referred Mr. Boyett to the medical staff for evaluation and possible treatment with anti-psychotic medications. Mr. Worlton was part of the three-person team that determined that Mr. Boyett was a danger to himself and that antipsychotic drugs should be administered to him for his own protection.

Mr. Boyett died on September 6, 2003. Mr. Keil was not on duty the day Boyett died. Mr. Worlton did not have any contact with Mr. Boyett on September 6; his interaction with Boyett was limited to two meetings on September 5, the day before Boyett's death.

On December 22, 2004, the plaintiffs filed a complaint alleging a variety of state and federal causes of action. The plaintiffs named as defendants Washington County, the Washington County Purgatory Correctional Facility, Washington Country Sheriff Department, and several corrections facility and sheriff department employees in their official and individual capacities.

On March 3, 2005, the defendants answered the complaint and later filed their first motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) on March 18, 2005.[1] The court granted the motion in part and denied it in part.[2] The plaintiffs stipulated to dismissal of the first claim against the individually named defendants in their official capacities and of the second claim against the Corrections Facility and the Sheriff's office.[3] The court denied the motion to dismiss the second claim for relief against Sheriff Kirk Smith in his official capacity.[4]

On July 6, 2005, the defendants filed their second motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).[5] The court granted the motion dismissing the state law causes of action without prejudice.[6] The defendants then filed a third motion to dismiss pursuant to Rule 12(b)(6) seeking to dismiss the plaintiffs' claims regarding activities after Mr. Boyett's death.[7] The court construed the motion to dismiss as a motion for judgment on the pleadings and granted the motion.[8] On December 11, 2005, Defendant Randy McKinnon filed a motion for

---

[1] Washington County Defs.' Mot. to Dismiss (Docket No. 8).

[2] Order Granting in Part Washington County Defs.' Mot. to Dismiss (Apr. 12, 2005), Docket No. 15.

[3] *Id.*

[4] *Id.*

[5] Washington County Defs.' Mot. to Dismiss (Docket No. 19).

[6] Order Granting Washington County Defs.' Mot. to Dismiss (Aug. 24, 2005), Docket No. 26.

[7] Washington County Defs.' Mot. to Dismiss (Docket No. 28).

[8] Order Granting Washington County Defs.' Mot. to Dismiss (Oct. 25, 2005), Docket No. 53.

summary judgment, which the court granted.

As a result of these prior motions, the only claims left in this suit are the plaintiffs' first and second claims for damages under 42 U.S.C. §§ 1983 and 1988 against Washington County, Washington County Purgatory Corrections Facility, Washington Country Sheriff Department, and the following defendants in their individual capacities:  Sheriff Kirk Smith, James Hanson, Destiny Hummer, Fred Keil, Raymond J. Kounalis, Gene Redford, Sabrina Steel, Darryl McCoy, Jon Worlton, and Dave Patt.

## DISCUSSION

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[9]  Facts are viewed in the light most favorable to the non-moving party.[10]

Plaintiffs allege various constitutional violations against Mr. Keil and Mr. Worlton. Against Mr. Keil, plaintiffs allege deliberate indifference to Mr. Boyett's serious medical needs and use of excessive force.  Against Mr. Worlton, plaintiffs allege deliberate indifference to Mr. Boyett's serious medical needs and involuntary administration of antipsychotic drugs.

In response to these allegations, defendants invoked the defense of qualified immunity in their answer.  As a result of defendants invoking the defense of qualified immunity, plaintiffs must demonstrate that defendants violated a specific constitutional right and that this right was

---

[9] Fed. R. Civ. P. 56(c).

[10] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

"clearly established" at the time of defendant's actions.[11]  Because there is no evidence presented to the court that defendants violated Mr. Boyett's constitutional rights, the court need not reach the question of whether these rights were clearly established.

      I.      *Deliberate Indifference Claims*

A prison official who shows deliberate indifference to an inmate's serious medical needs violates the prohibition against cruel and unusual punishment in the Eighth Amendment.[12]  The deliberate indifference inquiry involves both an objective and subjective component.  The objective component is satisfied when the deprivation is "sufficiently serious."[13]  "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[14]  If there is a sufficiently serious condition and the alleged deliberate indifference stems from a delay in treating that condition, a defendant is liable only if "the delay [in medical care] resulted in substantial harm."[15]  However, a plaintiff's difference of opinion with the medical judgment of medical staff does not state a constitutional violation.[16]  Even negligence by a treating physician that rises to the level of medical malpractice does not violate

---

[11]*Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[12]*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[13]*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[14]*Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (further quotation omitted)).

[15]*Oxendine v. Kaplan*, 24 F.3d 1272, 1276 (10th Cir. 2001).

[16]*Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

the Eighth Amendment.[17]

Even if the objective component is demonstrated, there is no liability unless the subjective component is also satisfied. The subjective component is satisfied when the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[18]

### A.   *Defendant Fred Keil*

Mr. Keil's actions do not demonstrate deliberate indifference to Mr. Boyett's medical needs. Under the objective component of the inquiry, there is no evidence that Mr. Keil delayed medical treatment of Mr. Boyett. On September 3, 2003, another prisoner notified Mr. Keil that Mr. Boyett was dizzy and fell.[19] Mr. Keil radioed Nurse Darryl McCoy and waited by Mr. Boyett until Mr. McCoy arrived. Mr. McCoy examine Mr. Boyett and treated him for a cut on the arm.[20]

There is also no evidence that any delay by Mr. Keil caused Mr. Boyett substantial harm. Nurse McCoy's report of his examination of Mr. Boyett on this day does not indicate that Mr. Boyett had received any injuries except for a cut to the arm.[21] In addition, Plaintiffs have failed

---

[17]*Id.*

[18]*Farmer*, 511 U.S. at 837.

[19]Depo. of Fred Keil, 6:12–18, Ex. 1 of Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 77).

[20]*Id.*; Jail Log Entry of Darryl McCoy, Sept. 3, 2003, Ex. 3 of Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 77).

[21]Jail Log Entry of Darryl McCoy, Sept. 3, 2003, Ex. 3 of Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 77).

to produce any evidence that a delay by Mr. Keil caused Mr. Boyett any harm. Based on these undisputed facts, plaintiffs have not satisfied the objective component of the deliberate indifference inquiry. Thus, the court need not reach the subjective component of the deliberate indifference inquiry.

     B.    *Defendant Jon Worlton*

Mr. Worlton's actions do not demonstrate deliberate indifference to Mr. Boyett's medical needs. On September 5, 2003, Mr. Worlton interviewed Mr. Boyett at the request of the facility's medical staff.[22] Mr. Worlton concluded that Mr. Boyett was suffering from some psychosis and may be a danger to himself.[23] Mr. Worlton referred Mr. Boyett for evaluation and treatment with anti-psychotic medications.[24] Since Mr. Worlton examined Mr. Boyett and referred him to the medical staff for further evaluation and treatment, Mr. Worlton did not learn of and then "disregard[] an excessive risk to [Mr. Boyett's] health or safety.[25] Even if Mr. Worlton was negligent in evaluating Mr. Boyett, this fact would not suggest an Eighth Amendment violation.[26] Therefore, there is no evidence before the court to support the subjective prong of the deliberate indifference test, and the court need not reach the objective

---

[22] Mental Health Progress Note, Sept.3, 2003, Ex. B of Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 82).

[23] Depo. of Fred Keil, 30:1–5, Ex. A of Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 82).

[24] Mental Health Progress Note, Sept.3, 2003, Ex. B of Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 82).

[25] *See Farmer*, 511 U.S. at 837.

[26] *Perkins*, 165 F.3d at 811.

prong of the test.

## II. Excessive Use of Force

There is no evidence that Mr. Keil used excessive physical force against Mr. Boyett. Although Plaintiffs' characterize their assault claim as an unreasonable seizure under the Fourth Amendment,[27] this claim is clearly one alleging an excessive use of physical force by prison officials under the Eighth Amendment.[28] Whether a prison official's conduct violates the Eighth Amendment turns on whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."[29]

As noted above, there is no evidence that on September 3, 2003, Mr. Keil used any physical force against Mr. Boyett or that Mr. Boyett suffered any harm other than a cut to the arm resulting from his fall.[30] In addition, it is undisputed that Mr Keil was not on duty three days later when Mr. Boyett died.[31] As there is no evidence that Mr. Keil assaulted Mr. Boyett or that he was deliberately indifferent to Mr. Boyett's medical needs, Mr. Keil is entitled to qualified immunity against Plaintiffs' § 1983 claims.

---

[27] *See* Pls.' Mot. for Summ. J. and Response to Def.'s Mot. for Summ. J. (Docket No. 79), at 8–10.

[28] *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

[29] *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

[30] *Id.*

[31] Depo. of Fred Keil, 12:6–8, Ex. 1 of Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 77).

### III.     Involuntary Administration of Antipsychotic Drugs

Mr. Worlton did not violate Mr. Boyett's liberty interest against involuntary administration of antipsychotic drugs.  "It is well established that an individual has a liberty interest in 'avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.'"[32]  Court should balance the individual liberties of the inmate against "the interests of the institution in preventing the individual from harming himself or others residing or working in the institution."[33]  The State may treat a mentally-ill patient against his will "if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."[34]

On September 5, 2003, Mr. Worlton interviewed Mr. Boyett and concluded that Mr. Boyett could be mentally ill.[35]  Mr. Worlton was part of the three-person team that determined that Mr. Boyett was a danger to himself and that he should be administered antipsychotic drugs to protect himself.[36]  Construing the record in light most favorable to the plaintiffs, Mr. Boyett was exerting bizzare behavior the week before his death.  For example, Mr. Boyett was confused and disoriented during the interview with Mr. Worlton, made strange requests to the prison

---

[32]*Jurasek v. Utah State Hospital*, 158 F.3d 506, 510 (10th Cir. 1998) (quoting *Washington v. Harper*, 494 U.S. 210, 221–22 (1990)).

[33]*Id.*

[34]*Washington v. Harper*, 494 U.S. 210, 227 (1990).

[35]Mental Health Progress Note, Sept.3, 2003, Ex. B of Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 82).

[36]Depo. of Jon Worlton, 24:21–23, 28:13–17, Ex. 7 of Pla.'s Mem. in Response to Def.'s Mot. for Summ. J.(Docket No. 104).

officials,[37] and banged his head on a door through much of the swing shift the day before.[38] Mr. Boyett did not object to receiving the antipsychotic medication, so the medication was not administered against his will.[39] Since Mr. Boyett was determined to be mentally ill and a danger to himself, Mr. Worlton did not infringe Mr. Boyett's liberty interest by participating in the decision to administer the antipsychotic medication to Mr. Boyett.

  IV. *Expert Report*

  During the March 30, 2006, hearing on these motions, some question arose as to whether information provided in forthcoming expert report would suggest that summary judgment should be denied. Since the hearing, the report of plaintiffs' expert Roger Clark was filed on March 31, 2006. The court has reviewed that report and finds that it addresses largely unrelated subjects. Therefore, it does not create a genuine issue of material fact regarding these two defendants' liability. Thus, summary judgment is still appropriate for defendants Keil and Worlton.

  V. *Motion to Strike*

  Finally, defendants filed a motion to strike certain reports that plaintiffs submitted in support of their motion for summary judgment. Since plaintiffs have voluntarily withdrawn their summary judgment motion, the motion to strike is DENIED AS MOOT.

---

[37] Mental Health Progress Note, Sept.3, 2003, Ex. B of Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 82).

[38] Jail Log Entry of James Hanson, Sept. 4, 2003, Ex. M of Pla.'s Mem. in Response to Def.'s Mot. for Summ. J.(Docket No. 104), at BOY 0542.

[39] Depo. of James Hanson, 83:21–25 to 84:1–8, Ex. 4 of Pla.'s Mem. in Response to Def.'s Mot. for Summ. J.(Docket No. 104).

CONCLUSION

Defendants Fred Keil's and Jon Worlton's motions for summary judgment [# 76, 81] are GRANTED.  All plaintiffs' § 1983 claims against Defendants Fred Keil and Jon Worlton are dismissed with prejudice.  Plaintiffs' motion to withdraw their motion for summary judgment against all defendants [#115]  is GRANTED; docket # 78 is therefore withdrawn.  Defendants' motion to strike [# 99] is DENIED AS MOOT.

SO ORDERED.

DATED this 26th day of April, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge